The opinion of the Court was delivered by
G-lover, J.
On the application of Oliver Hewitt a habeas corpus was obtained, commanding Lucius 0. Robert to have the bodies of Alice Robert, his wife, and Laurel Point Robert, his son, by him alleged to be illegally restrained, before Judge Wardlaw, &c. — L. C. Robert with-Alice his wife, appeared and made a return denying any illegal restraint of his wife and excusing the absence of his son. After hearing affidavits and argument of counsel, the judge ordered that Mrs. Robert “ be at liberty to go whithersoever she pleased,” and that L. C. Robert enter into recognizance to produce his son on some future day, that the claim of the said Alice to have the said infant might be considered and determined, with leave to the parties, in the meantime to prepare affidavits.
On the 12th December the application in behalf of the said Alice to have the custody of her infant son was heard, and after argument, the judge observes, “I was of opinion that Mrs. Robert’s character was good, but that she had failed to sustain by credible witnesses, the charges against her husband which he denied and, as far as practicable, seemed to have disproved.
“I thought that the immediate interest of the child would not suffer from its remaining with the father, and that its prospective interests in a mere pecuniary view would be thereby greatly promoted, and so far as I could see in a moral view not be endangered. I indicated my opinion and would have made an order discharging the said Lucius C. Robert from his recognizaáce and from further attendance, but having received the annexed notice of appeal, I directed the recog *329 nizance to stand to abide tbe order of the Court of Appeals in the matter.”
When the order was made that Mrs. Robert be at liberty to go whithersoever she pleased, accompanied by her brother Oliver Hewitt, she voluntarily left her husband and still lives separate and apart from him, and also left her infant son, now about seven months old, in his custody, where it has since continued.
The application is renewed in this Court to change that custody and to transfer it from the father to the mother.
Except so far as the decision of the question involved makes it necessary, we will not enquire into the causes alleged in excuse for the separation. Whether Mrs. Robert shall return to her husband, is a question demanding grave consideration and which she must determine, aided by the counsel of wise and prudent friends. Our duty is to settle the conflicting claims of herself and her husband to the custody of their infant son, while they may continue to live apart.
It is assumed in the argument “that the father has no superior right over the mother to'the custody of his infant children, and that other things being equal, the mother’s claim is to be preferred as to the custody of infants within the age of nurture.” This is not the language of the law, which, looking to the peace and happiness of families and to the best interests of society, places the husband and father at the head of the household. By the common law the legal existence of the woman is suspended during the marriage, and the law even excuses some offences committed by her in his presence, expressly upon the presumption of that coersion which her subjection implies. The obligation imposed on the husband to provide for their wants and protection, makes it, necessary that he should exercise a power of control over all the members of his household. That divided empire in the government of a family, on which the argument proceeds, is not consistent with the welfare of the wife and children, *330 and has not the sanction of the law. His authority however is that of a mild and considerate ruler, tempered by those happy influences which a prudent wife exercises over her husband, and on which in a great measure the fortunes of his house depend. When their rights to the custody of their children come in conflict, we only follow the law in preferring the superior claim of the husband, unless his custody should be inconsistent with the welfare of his children, which is,a paramount consideration, and will always regulate the discre-' tion exercised in the disposition of them. The paternal right may be forfeited by an inability or neglect to provide for the child’s wants, by a brutal exercise of authority, or by the open practice of those vices which corrupt the infant mind; and we should regard it as a safe exercise of the discretion vested in the Court, to remove from the custody of a father his infant child, where he lived in open adultery and the ■child would be exposed to the dangerous influences of an abandoned woman, regardless of the nurture and virtuous training which infancy requires, and which none so fitly as a mother can superintend and direct. Conceding Mrs, Eobert’s fitness for the discharge of the duties arising from the relation of parent and child, we cannot disturb the legal possession of her husband unless she can show his inability to provide for the necessary wants of his child, and to train it up in the way it should go. The objections urged against his custody consist of alleged acts of brutality towards his wife and children, his neglect to provide for them food and clothing, and his infidelity to his wife. After a review of the evidence we do not perceive any sufficient reason for changing the custody of the child. The affidavits submitted in support and denial of the charges alleged against Lucius 0. Eobert, may induce us to believe that he has not cherished his wife as his duty required, and that many of her reasonable expectations have been sadly disappointed: but there is no satisfactory proof *331 that can justify the removal of the child, and until that is furnished it must remain where the law has placed it.
The motion is therefore refused, and it is ordered that Lucius O. Bobert be discharged from his recognizance.
Motion dismissed.
Wardlaw, Withers and Whither, JJ., concurred.

Motion dismissed.